IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RICHARD A. ZORN                                                                    PLAINTIFF

v.                                          CIVIL NO. 10-3076

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Richard A. Zorn, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on May 19, 2006,

alleging an inability to work since May 21, 2004, due to two bulging discs, degenerative bone

spurs in the neck and back, and ADHD as a child.  (Tr. 156-158, 162-164).  For DIB purposes,

Plaintiff maintained insured status through June 30, 2008.  (Tr. 50 ).  An administrative hearing

was held on May 27, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 12-43).

Plaintiff's sister and a vocational expert also testified at this hearing.

By written decision dated August 31, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 52). Specifically, the ALJ found Plaintiff had the following severe impairments: a back disorder, a mood disorder and obesity. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 53). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that while the claimant can occasionally lift and/or carry twenty pounds, and frequently ten pounds, sit for six hours in an eight hour work day in uninterrupted time blocks of two hours, and stand and/or walk for six hours total in an eight hour work day in uninterrupted time blocks of two hours, he can not climb scaffolds, ladders, or ropes. The claimant can occasionally climb stairs and ramps, balance, stoop, crouch, crawl, kneel, and work overhead, bilaterally. The claimant is moderately limited in the ability to understand, remember, and carry out detailed instructions, respond appropriately to usual work situations and routine work changes, and interact appropriately to usual work situations and routine work changes, and interact appropriately with supervisors, co-workers, and the public. Moderately limited means there is more than a slight limitation, but the claimant can perform in a satisfactory manner. The claimant can work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and experienced by rote, there are few variables, little judgment is required and the supervision is simple, direct, and concrete.

(Tr. 55). With the help of a vocational expert, the ALJ determined Plaintiff could not perform his past relevant work but could perform other work as a small product assembler, a poultry eviscerator, and a housekeeper/cleaner.

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 21, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc.

1).  Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation.  (Docs. 9, 10).

## II.    Evidence Presented:

At the time of the administrative hearing held before the ALJ on May 27, 2009, Plaintiff, who was twenty-eight years of age, testified that he had earned his GED.  (Tr. 18-19).  Plaintiff testified that he worked twelve to fifteen hours a week delivering newspapers.  (Tr. 33).  The record reveals Plaintiff's past work consists of work as a janitor, and a car cleaner.  (Tr. 236).

The medical evidence dated prior to the relevant time period reveals Plaintiff sought treatment for neck and back pain.  (Tr. 251-266, 269-280).  The record also reflects that when Plaintiff was ten years old he was admitted into St. Anthony's Medical Center due to violent behavior.  (Tr. 315-392).  Testing performed at that time revealed a normal EEG.  (Tr. 382).

The medical evidence during the relevant time period reflects the following.  In a letter dated May 12, 2004, Dr. Robert P. Poetz indicated Plaintiff was seen in the office for an evaluation of his neck and back complaints on May 3, 2004.  (Tr. 275-278).  Plaintiff reported he had not been treated since he saw Dr. Michael Chabot and that he was employed with Frosty Treats as a driver.  Plaintiff reported that he smoked one and one half to two packages of cigarettes a day.  Upon examination, Dr. Poetz noted Plaintiff ambulated with a normal gait.  Dr. Poetz diagnosed Plaintiff with degenerative disc disease cervical and thoracic spine, pre-existing; and cervical/thoracic/lumbar strain with exacerbation of cervical and thoracic degenerative disc disease.  Dr. Poetz stated that in his opinion the bulging discs present on the MRI were pre-existing in nature and that they were asymptomatic.  Dr. Poetz opined that Plaintiff's prognosis was guarded due to the length of time that had elapsed since the injury.  Dr. Poetz recommended

-3-

Plaintiff use warm moist packs and that he do range of motion exercises.  Plaintiff was instructed to avoid heavy lifting; prolonged standing, sitting and walking; and any activity that exacerbated symptoms.  Plaintiff was also told to consider undergoing epidural steroid injections.  Dr. Poetz opined that Plaintiff had a 5% permanent partial disability to the body as a whole, as measured at the cervical/thoracic spine; and a 20% permanent partial disability to the body as a whole, as measured at the cervical/thoracic/lumbar strain, directly resultant from the August 5, 2002 work related injury.

On July 22, 2006, Plaintiff underwent a consultative orthopedic evaluation performed by Dr. Poetz.  (Tr. 281-285).  Plaintiff admitted to experiencing a lot of pain and described this pain as an ice pick type stabbing sensation in his mid-back often with radiation to the front and mid-sternal region.  Plaintiff complained of upper and mid-back pain.  Plaintiff also reported that his left leg occasionally would suddenly get weak and that he would lose his balance.  Plaintiff reported that when he had back pain in the mid back it would also radiate up into his arms.  Dr. Poetz noted Plaintiff ambulated with a normal gait and station.  Dr. Poetz noted that there was no evidence of joint swelling, inflammation or tenderness to palpation to any of the cervical and/or thoracic or lumbosacral spine regions.  Dr. Poetz noted Plaintiff's deep tendon reflexes were flat but equal bilaterally.  Dr. Poetz noted Plaintiff was unable to squat or to heel or toe-walk.  Plaintiff's straight leg raising from a supine position and a seated position was to twenty degrees on the left and the right.  Dr. Poetz noted Plaintiff's flexion of the lumbosacral spine was to approximately seventy degrees.  Dr. Poetz diagnosed Plaintiff with a history of back strain with cervical and thoracic strain; degenerative disc disease of the cervical and thoracic spine; morbid obesity; and probably hypertension.

-4-

On August 2, 2006, Dr. C. Holmes, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 286-291). Dr. Holmes opined that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and could never climb ladders, ropes, or scaffolds. Dr. Holmes opined Plaintiff was limited in his ability to reach in all directions but unlimited in his ability to handle, finger and feel. Dr. Holmes opined Plaintiff had no visual, communicative or environmental limitations. Dr. Holmes made the following additional comments:

> Dr Chabot- spine specialist- LETTER DF 3/9/04 INDICATED THAT MD FELT THAT HE COULD RETURN TO REGULAR WORK DUTIES. STATEMENT APPEARS CONSISTENT WITH FINDINGS ANS (sic) TOTALITY OF THE EVIDENCE AND IS GIVEN SIG WEIGHT.

(Tr. 291).

On August 7, 2006, Dr. A. Kresheck, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had no medically determinable impairment. (Tr. 292-303). Dr. Kresheck's consultant notes state the following:

> ...REVIEW OF AVAILABLE MER INDICATES THAT A PSYCH MDI HAS NOT BEEN ESTABLISHED. CLMT ALLEGES ADHD AS A CHILD AND THIS IS AN ADULT CLAIM. CLMT DOES NOT TAKE MEDICATION FOR PSYCH AND HAS NOT HAD ANY PSYCH TXMENT AND PSYCH TXMENT HAS NOT BEEN RECOMMENDED IN THE REVIEWED AVAILABLE MER. CLMT CARES FOR PERSONAL NEEDS, CARES FOR ANIMAL, WORKS, AND DRIVES. HE INDICATED THAT HE WAS ABLE

AO72A
(Rev. 8/82)

TO FOLLOW INSTRUCTIONS AND HANDLE MONEY. NO PSYCH MDI
ESTABLISHED.

(Tr. 302).

On May 26, 2009, Plaintiff underwent a neuropsychological evaluation performed by Dr.
Vann Arthur Smith.  (Tr. 305-308).  After evaluating Plaintiff, Dr. Smith opined that Plaintiff's
clinical history, mental status examination and neuropsychodiagnostic screening test profile data
revealed a pattern of abnormal findings consistent with the presence of diffuse, bilateral organic
brain dysfunction of moderate severity and slowly progressive velocity.  Dr. Smith noted that
Plaintiff's test profile data was consistent with Plaintiff's reported clinical history of multiple
traumatic brain injuries; coronary artery disease; an endocrine disorder, not otherwise specified;
and a chronic, multifocal, poorly controlled, non-psychogenic, pain disorder.  Dr. Smith
indicated that Plaintiff's reported history of "angry outbursts" with no clearly defined
environmental triggers, accompanied/preceded by olfactory/gustatory hallucinations was strongly
suggestive of a complex partial seizure variant.  Dr. Smith recommended Plaintiff be further
evaluated by a qualified neurologist.  Dr. Smith noted that during his discussion with Plaintiff,
Plaintiff noted recurrent "rage" episodes which were associated with spikes in blood pressure.
Dr. Smith recommended Plaintiff be seen by a endocrinologist or a neuroendocrinologist.  Dr.
Smith diagnosed Plaintiff with a cognitive dysfunction, non-psychotic, secondary to general
medical condition.

On May 26, 2009, Dr. Smith also completed a mental RFC questionnaire opining
Plaintiff's current global assessment of functioning score was 35-40, and his highest in the past
year was 75-80. (Tr. 309-313).  Dr. Smith opined Plaintiff's prognosis was guarded.  Dr. Smith

AO72A
(Rev. 8/82)

noted Plaintiff's signs and symptoms were as follows: anhedonia or pervasive loss of interest in almost all activities; decreased energy; mood disturbance; difficulty thinking or concentrating, change in personality, psychological or behavioral abnormalities associated with a dysfunction of the brain with a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities; emotional lability; easy distractibility; memory impairment - short, intermediate or long term; and sleep disturbance. Dr. Smith opined Plaintiff was seriously limited, but not precluded or unable to meet competitive standards in thirteen of the twenty-five areas of functioning; and unable to meet competitive standards in ten of the twenty-five areas of functioning. Dr. Smith further opined Plaintiff would miss more than four days per month due to his impairments.

On August 14, 2009, Plaintiff underwent a mental diagnostic evaluation performed by D. Robert L. Hudson. (Tr. 392-395). Dr. Hudson noted Plaintiff had taken on what he could of the family job of delivering newspapers by automobile. Dr. Hudson noted that with this job Plaintiff rarely had to be around others which made it a perfect fit for him. Dr. Hudson noted Plaintiff was not being treated by a mental healthcare provider and that Plaintiff did not have a primary care physician. Dr. Hudson noted Plaintiff would be a good referral to Arkansas Rehabilitation Services. Plaintiff reported he smoked one to one and one half packages of cigarettes a day. Dr. Hudson noted Plaintiff was cooperative and that a good rapport was easily established. Dr. Hudson, who indicated that without more data/time the diagnosis would be generic, diagnosed Plaintiff with a mood disorder, intermittent explosive disorder and a personality disorder. Dr. Hudson estimated Plaintiff's GAF score to be 51-60. Dr. Hudson noted Plaintiff had never lived on his own so he had not had to shop for groceries, cook or pay bills.

Plaintiff reported that he did not like to be around others, but that he would go with his mother to "Celebrate Recovery" at the Salvation Army. Dr. Hudson noted Plaintiff did not appear to have significant mental/cognitive limits on basic work-like tasks. Dr. Hudson noted some limits to attend and sustain concentration, in that he had poor recall at five minutes, but Plaintiff had no significant limits with persistence or completion of tasks in a timely manner.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

-8-

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.   Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

**A.     Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2008. Regarding Plaintiff's

-9-

application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of May 21, 2004, his alleged onset date of disability, through June 30, 2008, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of Plaintiff's condition subsequent to the expiration of Plaintiff's insured status is relevant only to the extent it helps establish Plaintiff's condition before the expiration. Id. at 1169.

**B.     Subjective Complaints and Credibility Analysis:**

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

-10-

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's back and neck pain, while the record shows Plaintiff did seek treatment for his back and neck pain prior to the relevant time period, the medical evidence reveals that, with the exception of a consultative examination, Plaintiff was not seen by a medical professional for his alleged disabling pain during the relevant time period.  See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment was inconsistent with allegations of pain).   It is noteworthy that when Plaintiff underwent the consultative examination in July of 2006, Dr. Poetz reported Plaintiff was able to ambulate with a normal gait and station.  Dr. Poetz found no evidence of joint swelling, inflammation or tenderness to palpation to any of the cervical and/or thoracic or lumbosacral spine regions.  Dr. Poetz noted Plaintiff's deep tendon reflexes were flat but equal bilaterally.  Dr. Poetz noted Plaintiff was unable to squat or to heel or toe-walk; that Plaintiff's straight leg raising from a supine position and seated position was to twenty degrees on the left and the right; and that Plaintiff's flexion of the lumbosacral spine was to approximately seventy degrees.  The record further reveals Plaintiff was not taking any medication for his alleged disabling pain.  See Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).  The Court finds, based on the evidence recited above, that there is substantial evidence supporting the ALJ's finding that Plaintiff's neck and back impairment were not disabling during the relevant time period.  See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact

-11-

sustained a back injury and suffered some degree of pain); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).   The record also reveals that Plaintiff was able to come up with the funds to support his one and one-half to two package a day smoking habit.

As for Plaintiff's alleged depression, there is no medical evidence of record revealing that Plaintiff sought on-going and consistent treatment for his alleged mental impairments during the relevant time period.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).  The medical evidence revealed that when Plaintiff was ten years of age he was admitted into St. Anthony's Medical Center due to violent behavior and an EEG performed at the time was normal.  This is the only record that Plaintiff sought any treatment for a mental health impairment.  While Plaintiff reported to consultative examiners that he did not like to be around people and that he continued to experience anger outbursts, there is no evidence that Plaintiff sought treatment for these issues.  Furthermore, in a Function Report dated June 18, 2006, Plaintiff indicated that he was able to shop in stores, and  to go to the Waffle House daily. (Tr. 208).  Plaintiff made no mention of having on-going difficulties with being around people.  Plaintiff's grandmother also completed a 3rd Party Function Report on June 17, 2006,

-12-

and, with the exception of mentioning Plaintiff's treatment when he was ten, she made no mention of Plaintiff's alleged temper or anger issues. (Tr. 191). After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. Plaintiff testified at the administrative hearing that he was able to work 12 to 15 hours a week delivering newspapers. Furthermore, in a Function Report dated June 18, 2006, Plaintiff indicated that he was able to take care of his dog; to take care of his personal needs, albeit more slowly; to do laundry and take out the trash; to go out and get coffee three times a day; and to shop for groceries. The record also revealed that Plaintiff was able to drive and to prepare simple meals. This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. Cruze v. Chater, 85 F.3d 1320, 1324 (8th Cir.1996) (the ability to care for animals, shop, do odd jobs and visit town tends to prove claimant was able to work).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.    RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant

-13-

AO72A
(Rev. 8/82)

evidence in the record. Id.  This includes medical records, observations of treating physicians and

others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d

798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

Limitations resulting from symptoms such as pain are also factored into the assessment.  20

C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that

a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700,

704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be

supported by medical evidence that addresses the claimant's ability to function in the workplace.

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth

specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In finding Plaintiff able to perform light work with limitations, the ALJ considered

Plaintiff's subjective complaints, the medical records of his treating and examining physicians,

and the evaluations of the non-examining medical examiners.

With regard to the opinions of Plaintiff's treating and examining physicians, the ALJ

stated that he gave the opinion of Dr. Smith little weight. The ALJ pointed out that Dr. Smith

indicated that he based at least part of his analysis on Plaintiff's subjective report of a history of

head trauma, which was not documented in the medical evidence of record.  The ALJ also pointed

out that Dr. Smith's findings and his opinion that  Plaintiff was disabled were not consistent with

the record as a whole. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)(the ALJ may reject

the conclusions of any medical expert, whether hired by the claimant or the government, if they

are inconsistent with the record as a whole).  A review of the record fails to show that Plaintiff

-14-

reported experiencing numerous head traumas to his treating physicians. It is also noteworthy that Dr. Smith did not review any of Plaintiff's prior medical records.

Courts have affirmed decisions in which one-time examination reports from Dr. Smith were accorded little weight. See Hudson v. Barnhart, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing psychologists"). In Clement v. Barnhart, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities." Id. at *1. District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Smith's opinions. See Cole v. Astrue, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(held that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record); Partee v. Astrue, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(held that the ALJ clearly recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith); Haarstad v. Astrue, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009). The court in Cole also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." 2009 WL 3158209 at *8, n.1. After reviewing the record, the Court finds that substantial evidence of record supports the ALJ's determination to give Dr. Smith's opinion little weight.

-15-

The ALJ also considered the opinion of Dr. Hudson, who after reviewing Plaintiff's medical history, including the findings of Dr. Smith, and examining Plaintiff in August of 2009, opined that while Plaintiff exhibited some limits on the ability to attend and sustain concentration, Plaintiff had no significant limits with persistence or completion of tasks in a timely manner. Dr. Hudson also noted that Plaintiff was cooperative and that a good rapport with Plaintiff was easily established. Dr. Hudson further opined that Plaintiff had no significant mental/cognitive limits on basic work-like tasks. The record also revealed that Dr. Hudson opined that Plaintiff maintained a GAF score of 51-60 which has been associated with moderate impairment in occupational functioning. Martise v. Astrue, 641 F.3d 909, 919 (8th Cir. 2011)(according to the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), a GAF of 51 to 60 indicates moderate symptoms)(citations omitted).

As for Plaintiff's obesity, the Court notes that Plaintiff did not allege obesity in his application and did not testify to any limitations caused by his obesity at the administrative hearing. See Thompson v. Astrue, 226 Fed. Appx. 617, 620 (8th Cir.2007) (holding that the ALJ did not err in failing to obtain the testimony of a VE where the claimant failed to claim obesity as a disabling condition).

Based on our above discussion of the medical evidence and Plaintiff's activities throughout the relevant time period, the Court finds substantial evidence of record to support the ALJ's RFC determination.

**D.     Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the

-16-

impairments which the ALJ accepted as true and which were supported by the record as a whole.

Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the

vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that

Plaintiff's impairments did not preclude him from performing work as a small product assembler,

a poultry eviscerator, and a housekeeper/cleaner. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir.

1996)(testimony from vocational expert based on properly phrased hypothetical question

constitutes substantial evidence).

**IV.    Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing

Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and**

**recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The**

**failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de novo**

**review by the district court.**

DATED this 3rd day of January 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-17-